IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN JOHNATHAN SORRICK,

    Plaintiff,

v.

WEXFORD HEALTH SOURCES, et al.,

    Defendants.

Civil Action No.: LKG-22-2272

Dated: February 27, 2024

## MEMORANDUM

Self-represented Plaintiff Kevin Johnathan Sorrick brings this civil rights action against Wexford Health Sources, Inc. ("Wexford"); Corizon Medical Service, Inc. ("Corizon");[1] Dr. Ashok Krishnaswamy, Grace Medical Center, Inc. ("Grace Medical");[2] Dr. Jason Clem; Dr. Clayton Raab; Stephanie Cyran, NP; Physician Assistant Bruce Ford; Physician Assistant Peter Stanford; Jennifer Patterson, RN; YesCare Corporation ("YesCare"); Solaide Akintade; YesCare UMMD; and John Doe, YesCare UM. ECF Nos. 1 and 5. Sorrick claims Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

On April 12, 2023, Defendant Wexford filed a Motion to Dismiss or for Summary Judgment. ECF No. 19. Sorrick opposed. ECF No. 43. On May 25, 2023, Defendants Raab, Cyran, Ford, Patterson, Akintade, Clem, YesCare, YesCare UMMD, and John Doe (collectively the "YesCare Defendants") filed a Motion to Dismiss or for Summary Judgment.[3] ECF No. 32. On July 12, 2023, Defendant Grace Medical filed a Motion to Dismiss. ECF No. 45. On July 13, 2023, Defendant Krishnaswamy filed a Motion to Dismiss or for Summary Judgment. ECF No. 47. Sorrick filed an omnibus opposition to the YesCare, Krishnaswamy, and Grace Medical

---

[1] This case is and remains stayed as to Corizon pursuant to ongoing bankruptcy proceedings. *See* ECF No. 14.

[2] Sorrick originally named Bon Secours Hospital as a defendant. ECF No. 1. Grace Medical was substituted for Bon Secours on August 18, 2023, as the proper entity. *See* ECF No. 54.

[3] On November 28, 2023, upon notice from counsel, YesCare's Motion was adopted on behalf of Defendants YesCare UMMD and John Doe in addition to those named in the original Motion. ECF No. 61.

Motions on December 20, 2023. ECF No. 68. Grace Medical replied. ECF No. 71. Sorrick filed a Motion for Leave to File Surreply.[4] ECF No. 73.

On December 4, 2023, Sorrick filed a Motion to Dismiss. ECF No. 62. Defendants all opposed the Motion.[5] ECF Nos. 63, 64, 66, 70. Sorrick also filed a Motion to Appoint Counsel. ECF No. 69. All pending motions are ripe for review and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

## I.  BACKGROUND

Sorrick brings this suit alleging that he has not be properly diagnosed or treated for an injury to his right arm and shoulder which originally occurred on June 24, 2013. *See* ECF No. 1 at 17. Sorrick alleges that PA Peter Stanford assumed without evaluating him that his pain was caused by a muscle strain and instructed Sorrick to do daily calisthenic exercises and take ibuprofen. ECF No. 1-2 at 7. Sorrick continued to inform medical staff about his ongoing pain and Dr. Yvonne Osbourne prescribed him Tylenol and Gabapentin on July 24, 2013. *Id.* at 7-8. In October 2013, Sorrick was referred to a provider for chronic pain management. *Id.* at 8. Dr. Matera gave him a cortisone shot on December 31, 2013, and a second on October 9, 2014. *Id.* Dr. Matera also referred Sorrick to a physical therapist. *Id.*

On October 28, 2014, Sorrick saw PA Stanford who instructed him to take 600 mg Motrin twice daily and continue with the calisthenic exercise. ECF No. 1-2 at 8. Sorrick began physical therapy with Craig Jaachimawski on November 14, 2014. *Id.* at 8-9. During a chronic care visit on January 18, 2015, Dr. Osbourne submitted a referral for Sorrick to see an orthopedic specialist. *Id.* at 9. Sorrick was transferred to Jessup Regional Hospital on January 20, 2015, to see Dr. Lawrence Manning who diagnosed Sorrick with "a tear in [his] 'AC'" which would

---

[4] Sorrick seeks leave of the Court to file a surreply to Grace Medical's Reply. ECF No. 73. No party is entitled to file a surreply unless otherwise ordered by the Court. *See* Local Rule 105.2(a) (D. Md. 2023). A surreply is most often permitted when a party must respond to matters raised for the first time in a reply. *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D. D.C. 2001). Grace Medical does not raise any issues for the first time in their reply and therefore the Court finds no basis to grant Sorrick's Motion. The Motion is denied and Sorrick's proposed surreply will not be considered by the Court.

[5] The crux of Sorrick's Motion is that Defendants' motions were untimely filed and therefore time barred. ECF No. 62. He further complains about the lengthy service of process in this case, specifically as to Defendants Grace Medical and Krishnaswamy, and about the numerous filings by the defense attorneys. *See id.* at 12-18. There is little merit to the Motion. Even to the extent any of the Defendants did file their motions beyond the imposed deadline, there was no prejudice to Sorrick as he was also granted numerous extensions of time in which to file his oppositions to those motions and has similarly drawn out this litigation with his lengthy and repetitious filings. His Motion to Dismiss will be denied.

require surgical repair. *Id.* Dr. Manning was called away to an emergency while an x-ray was taken of Sorrick's shoulder and the correctional officers transporting Sorrick refused to leave the images behind for Dr. Manning to review. *Id.* They were returned to Eastern Correctional Institution ("ECI"), but during a chronic care visit on March 17, 2015, Dr. Ben Oteyza stated there was nothing in their records. *Id.* Dr. Oteyza said he would refer Sorrick back to Dr. Manning and schedule another cortisone shot for his pain. *Id.* Sorrick followed up about the x-rays during a sick call with RN Jennifer Patterson on June 10, 2015; she said she would contact Jessup Regional Hospital. *Id.* Sorrick saw Dr. Oteyza again on June 15, 2015, at which time he told Sorrick the x-rays were lost and that his referral to Dr. Manning was approved but staff had failed to schedule the appointment. *Id.* at 10. Sorrick returned again on September 23, 2015; Dr. Oteyza said the x-rays had been found and reviewed by Dr. Jason Clem who noted no visible damage. *Id.* Sorrick insisted that while it appears healed, his pain was constant; another orthopedic referral was submitted. *Id.*

Dr. Manning saw Sorrick again on December 8, 2015; he recommended an MRI to assess the extent of the damage to Sorrick's shoulder. ECF No. 1-2 at 10. Dr. Clem informed him on December 29, 2015, that he would be receiving the MRI but that three cortisone shots was the limit he could be administered. *Id.* at 11. Sorrick was taken to Peninsula Regional Medical Center ("PRMC") for an MRI on March 18, 2016. *Id.* He submitted a sick call the following day complaining about the pain in his arm as a result of being dropped out of the transport van the day prior. *Id.* Sorrick saw Dr. Manning on May 3, 2016, but ECI medical staff failed to send the MRI report with him for Dr. Manning's review. *Id.* at 12. Dr. Manning had another x-ray taken and contacted PRMC to have the MRI report faxed to him. *Id.* After review of the report, Dr. Manning confirmed that surgery was required and administered another cortisone shot. *Id.* at 12-13. PA Bruce Ford forwarded Dr. Manning's recommendations to Dr. Clem on May 9, 2016. *Id.* at 13. During a visit on August 22, 2016, Dr. Manning told Sorrick an error in the MRI report had been corrected and recommended that he be sent off-site for an orthopedic decompression consultation. *Id.* at 13-14.

Sorrick had a video visit with Dr. Clem and Dr. Krishnaswamy on October 12, 2016, at which time Dr. Krishnaswamy determined that Sorrick needed surgery on his right rotator cuff for three torn tendons. ECF No. 1 at 17; ECF No. 1-2 at 14. Dr. Krishnaswamy performed the surgery at Bon Secours Hospital (now Grace Medical Center) on January 12, 2017, and

instructed Sorrick to return in three weeks to have his stitches removed and that the surgical area needed to be cleaned and dressed daily to avoid infection. ECF No. 1-2 at 15-16. Sorrick was housed at ECI's infirmary until January 17, 2017, when he returned to general population. *Id.* at 16. Dr. Clem renewed Sorrick's prescription for Tramadol, however, Sorrick states that it was not authorized so Dr. Matera renewed it during an appointment on January 19, 2017. *Id.*

PA Ford saw Sorrick for a sick call on February 13, 2017, because the surgical area had become infected due to the medical department's failure to complete the daily dressing changes. ECF No. 1-2 at 17; *see* ECF No. 1-4 at 50-51 ("Daily Surgical Dressing Inspection and Changing Records"). Ford informed Sorrick his follow up visit had been scheduled and the daily dressing changes would resume. ECF No. 1-2 at 17. Sorrick returned to Grace Medical on February 22, 2017, to see Dr. Krishnaswamy. *Id.* Sorrick reported the infection and that the stitches had been partially removed. *Id.* at 17-18. Dr. Krishnaswamy removed the remaining stitches, noted that the area should have already healed if not for the infection, and wanted Sorrick to return in another week with continued daily dressing changes. *Id.* at 18. Despite Dr. Krishnaswamy's order, Sorrick's dressing were not changed until February 28, 2017, by NP Deborah Tabulov. *Id.* at 18-19.

Sorrick returned to see Dr. Krishnaswamy at Grace Medical on April 4, 2017. ECF No. 1-2 at 20. He stated he was still in a lot of pain following the surgery; Dr. Krishnaswamy increased the dosage of his Tramadol prescription. *Id.* He also ordered Sorrick to continue physical therapy, wear a sling at his own discretion, and to follow up with a telemedicine visit. *Id.* Dr. Matera saw Sorrick for a follow up on July 19, 2017, at which time Dr. Krishnaswamy's April orders had not been implemented. *Id.* at 21. Dr. Matera ordered the Tramadol and stated he would consult with Dr. Krishnaswamy about the telemedical visit. *Id.* Sorrick asked PA Ford on September 6, 2017, during an unrelated sick call, if the visit had been set up and Ford said he did not need to see Dr. Krishnaswamy because Ford could evaluate him. *Id.* Ford was profane and derogatory when Sorrick voiced his disagreement and failed to provide any care. *Id.* at 21-22.

Sorrick saw Dr. Krishnaswamy via video conference with Dr. Clem on September 13, 2017, regarding post-surgical pain. ECF No. 1-2 at 22. Dr. Krishnaswamy had Dr. Clem physically examine Sorrick to assess him for nerve pain and wanted to order a nerve test procedure but Dr. Clem told him that Wexford would not authorize the request. *Id.* Instead, Dr.

4

Krishnaswamy said if the pain did not subside in one month with physical therapy, to contact him and order an MRI. *Id.* Dr. Clem assured Sorrick the pain would subside soon. *Id.*

A month later, Sorrick informed the medical department that his pain was ongoing and a referral was made for a consultation. ECF No. 1-2 at 22. Sorrick saw Dr. Raab on January 30, 2018, and PA Ford on March 26, 2018; Sorrick states that Ford submitted a request for an MRI due to Sorrick's persistence. *Id.* at 22-23. Sorrick told PA Ruth Campbell he was waiting for the imaging and she said she would create another referral for an orthopedic consult so they could order the MRI. *Id.* at 23. Sorrick reported the lack of follow through by the medical department to Dr. Raab on August 8, 2018, who Sorrick asserts tried to dissuade him from pursuing treatment, but again, due to Sorrick's persistence stated he would "look into the MRI." *Id.*

No progress had been made when Sorrick saw NP Cyran on November 12, 2018; she said she would also check on the MRI request but the following day Sorrick received a letter with instructions for daily calisthenics exercises. ECF No. 1-2 at 23. Sorrick returned to Cyran on May 15, 2019; he reported that the pain was ongoing and the calisthenics were only making it worse. *Id.* at 24. Finally, on September 1, 2019, PA Campbell requested an orthopedic referral. *Id.* at 24-25.

Sorrick had an orthopedic consultation with Dr. Manning on November 11, 2019; he said he would submit a request for an MRI. ECF No. 1-2 at 25. On January 24, 2020, Sorrick was taken to PRMC for an MRI, however, it could not be completed because Sorrick had titanium surgical anchors and a CT scan was requested instead. *Id.*; ECF No. 1 at 18. Due to various delays, the scan was not performed until September 2, 2020. ECF No. 1 at 18; *see* ECF No. 1-2 at 26-27. Sorrick alleges that Dr. William M. Reid, who completed his CT scan told him that "the anchors had moved between three to four inches inward, through the shoulder area, damaging the surgical area, and are now deep inside the shoulder between the two main muscles" and called it "a botched surgery." *Id.* at 28.

Sorrick alleges that the CT scan results were not reported to ECI medical staff until June 21, 2021. ECF No. 1 at 18. He states that during that time he was instructed to continue with the calisthenic exercises by medical staff, including Dr. Raab. *Id.*; *see* ECF No. 1-2 at 28-29. Sorrick continued to report ongoing pain to Defendants at visits on October 21, 2020, and January 27, 2021. ECF No. 1 at 19-20. Specifically, on January 27, 2021, Dr. Raab instructed Sorrick to continue with the exercises despite his pain. Sorrick also asserts that Dr. Raab told

him he would submit a request for a CT scan but failed to do so. ECF No. 1-2 at 29. Finally, at an appointment on April 14, 2021, Dr. Raab agreed to submit a request for another orthopedic consult. *Id.* at 29-30; ECF No. 1 at 20.

Sorrick filed an administrative remedy procedure ("ARP") against medical providers on June 26, 2021, Case No. 0681-21. ECF No. 1-2 at 31.

Sorrick alleges that on July 10, 2021, an unidentified nurse told him she would inform PA Cyran that consultation requests were outstanding for his shoulder injury. ECF No. 1-2 at 31. After receiving copies of his medical records, on July 14, 2021, Sorrick confronted Dr. Raab about the results of the CT scan, asserting that it showed a more severe injury than before his surgery. ECF No. 1-2 at 32. Dr. Raab told him that the "Powers That Be" would not approve consultation or surgery for such an old injury but Sorrick insisted that he file a request anyway. *Id.* Sorrick states that when he returned two days later to discuss his ARP, the nurse told him that Dr. Raab had yet to submit a consultation request. *Id.* at 32-33. Requests for orthopedic consultations were later submitted by Dr. Raab on October 13, 2021, and on November 1, 2021, following Sorrick's reports of extreme pain. ECF No. 1 at 21; *see* ECF No. 1-2 at 33-34.

Sorrick saw Dr. Manning on November 18, 2021; he ordered (1) an x-ray of Sorrick's right shoulder; (2) an evaluation of "the labral tear and anchor placement" by an upper extremity subspecialist or sports medicine specialist; (3) pain relief ointment; and (4) a follow up visit in four to six weeks. ECF No. 1 at 21; ECF No. 1-2 at 35. The x-ray was completed the following day but Sorrick did not receive the ointment until February 11, 2022, nor was he sent for evaluation at Johns Hopkins Hospital until June 1, 2022. ECF No. 1 at 21. Sorrick submitted a second ARP on January 12, 2022, regarding the failure to execute Dr. Manning's orders, Case No. ECI 0074-22. ECF No. 1-2 at 36.

On February 10, 2022, Utilization Management ("UM") approved a follow up appointment with Dr. Manning. ECF No. 1-2 at 37. Sorrick saw Dr. Manning on February 17, 2022, who reiterated his recommendation for evaluation by a specialist. ECF No. 1 at 21-22. The Statewide UMMD ultimately approved the referral on March 29, 2022, after an initial rejection. *Id.* at 22.

Sorrick saw Dr. Raab again on May 26, 2022, and reported the continued pain in his right arm and shoulder. ECF No. 1-2 at 39. Sorrick states that Dr. Raab refused to look up any

information regarding the approved referral to a sports medicine specialist and would not renew his pain medication. *Id.*

Sorrick was ultimately diagnosed with a complete tear to his right rotator cuff on June 1, 2022, by PA Dennis W. Rivenburgh at Johns Hopkins Hospital. ECF No. 1 at 19; ECF No. 1-2 at 39, 40. Rivenburgh took a 3-D x-ray of Sorrick's shoulder and explained that the titanium anchors did not stay where they were attached during surgery and damaged the surrounding tissue, muscle, and ligaments. *Id.* at 39. Rivenburgh opined that Dr. Krishnaswamy should have used "self absorbing" anchors instead. *Id.* at 40. He also ordered a diagnostic ultrasound to determine the extent of damage to the tendons and ligaments. ECF No. 1 at 19; ECF No. 1-2 at 40. Rivenburgh also prescribed Tramadol to be taken twice a day and a follow up appointment to review the ultrasound. ECF No. 1-2 at 40. Dr. Raab completed the referral and prescription in early June 2022. *Id.* at 40-41.

Sorrick alleges that as of the date of signing his Complaint, August 19, 2022, he has not received the ultrasound. ECF No. 1 at 19. YesCare UM denied the ultrasound on June 10, 2022, finding that a medical necessity had not been demonstrated because the CT scan already showed the rotator cuff defect. *Id.* at 23; ECF No. 1-2 at 41. Sorrick states that since this denial no one has communicated with him about his injury or taken further steps to treat it. ECF No. 1 at 23. He states that he filed several sick calls regarding failure to provide his pain medication and ointment. ECF No. 1-2 at 42. His pain relief ointment was not provided until August 16, 2022. *Id.* at 43.

Sorrick seeks declaratory, injunctive, and monetary relief. ECF No. 1 at 26-28.

## II.   STANDARDS OF REVIEW

### a. Federal Rule 12(b)(6)

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d

635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

b. Conversion

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not

8

disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Sorrick that he had the right to respond to Wexford, Krishnaswamy, and the YesCare Defendants' Motions, that the Motions could be construed as motions for summary judgment, and that if he did not file a timely and adequate response, the Court could rule in Defendants' favor. ECF Nos. 20, 33, 48. Moreover, these Defendants' Motions, which identify summary judgment as possible relief, provided sufficient notice for Sorrick to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Sorrick opposed all of Defendants' Motions. Thus, the Court is satisfied that Sorrick has been advised that Defendants' Motions could be treated as motions for summary judgment and that he has been given a reasonable opportunity to present materials in response to the Motions. The Court will resolve the Motions under Rule 56 if appropriate.

### c. Federal Rule 56

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,"

then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

#### a. Wexford

Wexford asserts that the Complaint should be dismissed against it because Sorrick fails to state a claim or, alternatively, they are entitled to summary judgment because Sorrick's claim is barred by the statute of limitations. ECF No. 19-1 at 2. Specifically, Wexford argues that Sorrick fails to make any specific allegations against Wexford, instead only referring categorically to all Defendants. *Id.* at 6. Furthermore, Wexford asserts that none of Sorrick's allegations amount to a *Monell*[6] claim. *Id.*

Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Relevant here, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell*, 678 F.2d at 506; *Clark v. Maryland Dep't of Pub. Safety and Corr. Servs.*, 316 Fed. Appx. 279, 282 (4th Cir. 2009).

The Supreme Court held in *Monell* that a municipal corporation could not be held liable under § 1983 under respondeat superior alone. Relevant here, *Monell* liability has been extended to private entities operating under color of state law, including private prison health care providers. *See, e.g., West v. Atkins*, 487 U.S. 42, 49 (1988); *Polk Cty. V. Dodson*, 454 U.S. 312, 320 (1981); *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Thus, those standards applicable to

---

[6] *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). *See Powell v. Shopco Laurel Co.*, 63 F.2d 504, 506 (4th Cir. 1983) (holding that *Monell* applies to private corporations acting under color of state law the same way it applies to municipalities).

10

municipalities apply with full force to Wexford. *See Rodriguez*, 338 F.3d at 355 (observing that principles of § 1983 municipal liability "'apply equally to a private corporation'" acting under color of state law) (citation omitted). Thus, to state a viable § 1983 *Monell* claim, Sorrick must demonstrate that: (1) Wexford had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of his constitutional rights. *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

Sorrick opposes the Motion on several grounds. He complains that it was untimely filed beyond the 60-day deadline. ECF No. 43-1 at 5-6. While Sorrick is correct that they surpassed the initial deadline, he overlooks the additional time granted to Wexford to respond to his objections to their motion to file a subpoena. ECF No. 14. Moreover, there is no evidence that Sorrick was prejudiced by the delay; he was also granted additional time in which to file his response to the Motion. *See* ECF No. 31.

Sorrick further argues that Wexford should be held liable for deliberate indifference for not granting its employees requests, recommendations, and referrals because it inhibits their ability to provide an appropriate standard of care. ECF No. 43-1 at 11-12. Sorrick states that it was only through his own diligence and filing of grievances that he was able to receive the necessary medical care. *Id.* at 12. However, Sorrick's Complaint does not explicitly allege that Wexford maintained any policy or custom which caused a violation of his constitutional rights nor are his general allegations of denying requests from its medical providers sufficient to demonstrate that any such policy or custom existed. Furthermore, the Complaint does not allege any other actions taken against Sorrick by Wexford's employees from which a specific policy or custom could be surmised. Therefore, the Court finds that Sorrick has failed to state a claim against Wexford and the motion to dismiss will be granted.

b. <u>Grace Medical</u>

Grace Medical argues that Sorrick's claims against it should be dismissed because they are both time-barred and not judicially actionable. ECF No. 45-1 at 2. As noted by counsel, the defense of statute of limitations is not usually considered on a motion to dismiss. *Id.* at 4; *see State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d. 948, 964 (D. Md. 2019) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) and *Miller v. Pac. Shore Funding*, 224 F.

Supp. 2d 977, 985 (D. Md. 2002) *aff'd* 92 F. App'x 933 (4th Cir. 2004)). Therefore, the Court declines to rule on that basis. Instead, the Court will review the sufficiency of the Complaint under Rule 12(b)(6).

Based on the facts presented in the Complaint, Sorrick's references to Grace Medical relate solely to the fact that his surgery occurred there on January 12, 2017, and he received follow up care there through September 2017. However, nothing in the Complaint amounts to an allegation of deliberate indifference or that they are responsible under *Monell*. At most, Sorrick asserts that he received care in their facility from Dr. Krishnaswamy. Beyond this, the Court would simply be accepting legal conclusions as fact because Sorrick fails to allege with any specificity any misconduct by Grace Medical which would lead the Court to find that he has stated a plausible claim for relief. Accordingly, the Court will grant Grace Medical's Motion and his § 1983 claims will be dismissed.[7]

    c. Krishnaswamy

Krishnaswamy moves to dismiss the Complaint on the basis of insufficient service and that Sorrick fails to state a claim and even to the extent he does state a claim, it is barred by the statute of limitations. ECF No. 47-1 at 1. Alternatively, he asserts that he is entitled to summary judgment. *Id.*

Under Federal Rule of Civil Procedure 12(b)(5), Krishnaswamy moves to dismiss the Complaint for insufficient service of process. ECF No. 47-1 at 9-11. "Once service has been contested," as here, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006); *accord, e.g., Baylor v. Wegman's Food Market, Inc.*, WDQ-14-3330, 2015 WL 4396609, at *1 (D. Md. July 16, 2015).

Service of process, which is governed by Fed. R. Civ. P. 4, is a prerequisite to litigating in federal court. In its absence, a court lacks personal jurisdiction over the defendant." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019). Although the Court can "construe Rule 4 liberally" when the service of process, even if technically deficient, provided actual notice to the

---

[7] To the extent Sorrick sought to bring state law negligence or medical malpractice claims against Grace Medical, they will be dismissed without prejudice. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966).

defendant, the "plain requirements" for effecting service cannot be ignored. *O'Meara*, 464 F. Supp. 2d at 476 (quotations omitted); *see also Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 305 (4th Cir. 2016) ("Actual notice does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a pro se plaintiff.").

Krishnaswamy attests that on June 22, 2023, he discovered an envelope containing a copy of the summons and Complaint had been delivered to his office at 1412 North Crane Highway, Unit 1A, Glen Burnie, Maryland 21061. ECF No. 47-2 at ¶ 2. The envelope was not personally served on Krishnaswamy, he did not sign the acknowledgement of service, and is not aware of who, if anyone, did sign for the envelope upon delivery. *Id.* at ¶¶ 3-5. Krishnaswamy attests that no one at his business address is authorized to accept service on his behalf. *Id.* at ¶ 8.

In Maryland, service on an individual defendant is made by either: leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or by mailing to the person to be served a copy of the summons, Complaint, and all other papers filed with it by certified mail requesting "Restricted Delivery – show to whom, date, address of delivery." Maryland Rule 2-121(a). As Krishnaswamy attests that neither he nor someone authorized signed the acknowledgement of service, the Court finds that service is insufficient.

However, as the contested attempt at service was directed by this Court's Order, the Court does not find it appropriate to dismiss the Complaint on this basis. Krishnaswamy moves in the alternative for service to be quashed. ECF No. 47-1 at 11. Accordingly, the Court will grant Krishnaswamy's Motion to the extent that service will be quashed against him.

### d. YesCare Defendants

As a preliminary matter, review of the Complaint reveals no specific allegations against Defendants Akintade or John Doe. As liability only attaches through personal participation in a constitutional violation, the Complaint will be dismissed against them. *See Love-Lane*, 355 F.3d at 782 (no respondeat superior liability under § 1983).

As to the remaining YesCare Defendants, they argue that the Complaint must be dismissed against them because Sorrick's allegations are categorical and he fails to specify how any one of them was deliberately indifferent to his medical needs. ECF No. 32-1 at 6. They also argue that Sorrick fails to adequately plead a *Monell* claim against YesCare. *Id.* at 8. YesCare

has not submitted any materials outside of the pleadings and therefore the Court will construe their motion as a motion to dismiss.[8]

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison

---

[8] In their conclusion section, YesCare Defendants state that the Complaint is barred by the statute of limitations. As they fail to provide any substantive argument to support this conclusion, the Court will not entertain this defense.

official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

YesCare Defendants' rely solely on their assertion that all of Sorrick's allegations are stated only against them as a collective rather than against each individual defendant and therefore his generalized allegations are insufficient to state a claim. However, as the Court outlined above, Sorrick has, in fact, provided extensive factual details regarding his ongoing shoulder injury and how he alleges each of the YesCare Defendants were involved in failing to provide him with adequate medical care. In some instances, he alleges exactly what medical providers said to him. *See* ECF No. 1-3 at 8-18 ("Verbal Comments Made By Providers"). Based on their misconduct, he alleges that his diagnosis was impeded by delays in obtaining consultations or failures to communicate imaging results between providers, his surgical area became infected because his dressings were not monitored or cleaned, and he did not receive the necessary follow up treatment or testing because staff refused to schedule appointments or submit requests for imaging and consultations with specialists. And, ultimately, he asserts that his injury is ongoing and in need of further treatment.

As to YesCare specifically, Defendants argue, like Wexford, that Sorrick fails to allege their liability under *Monell*. ECF No. 32-1 at 8-9. Sorrick does not allege that any explicit YesCare policy or custom existed which violated his constitutional rights nor does he provide sufficient information regarding YesCare employees' decision from which the Court could infer that such a policy or custom existed. Accordingly, the Motion will be granted as to YesCare and the Complaint against it will be dismissed, however, because claims remain against many YesCare employees, the dismissal will be without prejudice to refiling.

### IV. CONCLUSION

For the foregoing reasons, Wexford's Motion to Dismiss or for Summary Judgment (ECF No. 19) and Grace Medical's Motion to Dismiss (ECF No. 45) will be granted and the Complaint dismissed against them. Krishnaswamy's Motion to Dismiss or for Summary Judgment (ECF No. 47) will be granted to the extent that service will be quashed against him. YesCare Defendants' Motion to Dismiss or for Summary Judgment will be granted in part and denied in part.

As this case will proceed, Sorrick's Motion to Appoint Counsel (ECF No. 69) will be granted. Furthermore, because several defendants will be dismissed and service is outstanding

for others,[9] the Court will direct appointed counsel to review the pleadings and file an amended complaint against the remaining defendants which will serve as the operative pleading moving forward.

A separate Order follows.

February 27, 2024
Date

LYDIA K. GRIGGSBY
United States District Judge

---

[9] The Court notes that Defendant Stanford remains unserved. Counsel for YesCare was unable to provide a last known address to the Court for purposes of service. *See* ECF No. 57.